UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
NO. 7:20-CR-167-5M2

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOSEPH MAURINO, Defendant | MOTION TO REVOKE OR AMEND THE MAGISTRATE JUDGE'S ORDER OF DETENTION |

"I got seven Mac-11's, about eight, .38's / Nine 9s," Christopher Wallace sang in "Come On," the 10th song on his third posthumous album, Born Again.[1] The Government twists this boastful lyric, allegedly quoted by 21-year-old defendant Joe Maurino in a chat message, into evidence that Joe has multiple firearms at his disposal and therefore should not be released pending his trial. The Government's claim is uncorroborated.[2]

The Defendant now timely appeals Magistrate Judge Robert Jones' August 11, 2021 order granting the Government's motion for detention, and asks for release on appropriate conditions, or a further hearing so that additional evidence may be presented, including testimony by an alternative third-party custodian.

---

[1] Born Again was released in 1999, three years after Mr. Wallace, a.k.a. Notorious B.I.G, a.k.a. Biggie Smalls, died, debuting at #1 on the *Billboard 200* chart with 485,000 albums sold. By January 2000, more than 2 million albums had been sold.

[2] Government Exhibit 8, Detention Hearing, August 11, 2021. Government Exhibit 3, a list of foodstuffs, batteries, and cleaning items, is claimed by the Government to be further evidence of nefarious conduct, rather than what it is: a list of unremarkable and commonplace items that millions of Americans were stockpiling in March 2020 when it seemed as if the COVID pandemic lockdown would leave us without access to the outside world for months or years. Government Exhibit 2, a video purportedly of Mr. Maurino acting out a tasteless skit and then firing a rifle at a target is mischaracterized by the Government as further evidence of troubling conduct, rather than the kind of ill-advised videos that appear on social media every day.

In support of this Motion, the undersigned argues that the Magistrate Judge did not properly identify the relevant standard of proof in granting the Government's motion, incorrectly applied well-established legal standards in making his decision, and failed to adequately consider that between about October 22, 2020 (when Joe Maurino was arrested on a related New Jersey state gun charge) and his arrest – on about June 26, 2021 at his parents' and his childhood home in Manalapan, New Jersey – that Joe was in compliance with the conditions of his state pre-trial release and that the lead agent, who testified at the August 11 Detention Hearing, told the court that there had been no evidence of any "problematic" conduct of any sort since October 22, 2020.

<u>Importantly: For nine months</u>, while Joe Maurino was on pre-trial release on his related state charges and while Joe was aware that his purported co-defendants had been arrested (and in pre-trial detention in the Eastern District of North Carolina) and have been facing serious federal charges, he took no steps to either flee, evade capture, hide evidence, or advance a criminal conspiracy in anyway. The 1984 Bail Reform Act, 18 U.S.C. § 3142 *et seq.*, requires that Joe Maurino be released unless "the judicial official determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of the safety of any other person or the community." (emphasis added) As federal courts throughout the country have recognized, the Bail Reform Act does not require an <u>ironclad</u> guarantee, since no guarantee could ever be made about any person's future theoretical conduct even here where all of the defendant's co-defendants are locked in pre-trial detention.

PROCEDURE

Joseph Maurino was named in a Superseding Indictment returned by a Grand Jury sitting in the Eastern District of North Carolina on or about June 6, 2021. The

indictment alleges Joe violated 18 U.S.C. § 922(a)(1)(A) in Court One by conspiring to "willfully and knowingly without licensure, engage in the business of manufacturing firearms and in the course of such business to ship, transport, and receive any firearm in interstate commerce." The purpose of the alleged conspiracy is a violation of the federal civil disorder statute at 18 U.S.C. § 231(a)(2). Upon conviction, Joe faces a possible punishment of up to 5 years in prison.

Four co-defendants – Liam Collins, Paul Kryscuk, Jordan Duncan, and Justin Hermanson – were arrested on or about October 20, 2020, and, upon belief and information, have been in continuous custody since arrest. On or about October 22, 2020, Joe was arrested peacefully and without incident at the local fire station where he served as a volunteer firefighter on New Jersey state gun charges related to the instant federal case. He was released from custody almost immediately, and, according to a letter from his state defense lawyer, has attended all hearings and not been found to have violated any conditions of his state pre-trial release. (Exhibit 1).

On about June 26, 2021, Joe was arrested at his parents' home in Manalapan, New Jersey peacefully and without incident. He has been in continuous custody since arrest, in New Jersey and Oklahoma awaiting transport to the EDNC, and then awaiting disposition of his case in the EDNC.[3]

In October 2020, the Government took possession of firearm parts with consent, and seized Joe's phone. To the extent the Government wished to search the family home without interference from Joe, the Government either did or could. To the extent that

---

[3] Upon information and belief, Joe's arrival into the EDNC was delayed owing to the overcrowding in EDNC local jails that have required the U.S. Marshal Service to seek alternative housing arrangements.

the Government wished to interview the family without interference from Joe, it did, in separate rooms.

## LEGAL STANDARD

The 1984 Bail Reform Act urges release in cases that do not involve a "rebuttable presumption," and sets out that detention is required <u>only if</u> a judicial officer determines that <u>no conditions</u> or combination of conditions exist which will "reasonably assure the appearance of the person," and reasonably assure "the safety of any other person and the community." see <u>United States v. Salerno</u>, 481 U.S. 739 (1987), <u>United States v. Xulam</u>, 84 F.3d 441, 442 (D.C.Cir. 1996)(per curiam) <u>United States v. Rodriguez</u>, 897 F. Supp. 1461, 1463 (S.D.Fla. 1995); 18 U.S.C. § 3142(c). Since no judicial official could ever have a crystal ball to predict the future behavior of human beings before the court, federal courts have recognized that no <u>ironclad guarantee</u> is required.[4]

The instant case is not a "rebuttable presumption" case under 3142(e).

A defendant may be detained to reasonably assure the safety of the community or others only by a "clear and convincing" standard of proof. 18 U.S.C. § 3142(f) A defendant may be detained to reasonably assure appearance by a "preponderance of evidence" standard of proof. See <u>United States v. Tedder</u>, 903 F. Supp. 344, 345 (N.D.N.Y. 1995) (citing <u>United States v. Martir</u>, 782 F.2d 1141, 1146 (2d Cir. 1986)); 18 U.S.C. § 3142(c). It is not necessary that the government prove both flight risk and danger to the community to warrant detention. See <u>United States v. Flores</u>, 856 F. Supp. 1400, 1401 (E.D.Cal. 1994).

---

[4] See <u>United States v. Ward</u>, 63 F. Supp. 2d 1203 (C.D. Cal. 1999) (no ironclad guarantee against flight, citing <u>United States v. Portes</u>, 786 F.2d at 764 n. 7 (7th Cir.); <u>United States v. Fortna</u>, 769 F.2d at 250 (5th Cir.); <u>United States v. Orta</u>, 760 F.2d 887, 891-92 (8th Cir. 1985).)

The judicial official is required to consider, under 18 U.S.C. § 3142(g), (1) the nature and circumstances of the offense charged, (2) the weight of the evidence against the person, (3) the history and characteristics of the person, and (4) the nature and seriousness of the danger to any person or the community posed by the person's release.

Pre-trial release is always an individual determination. Therefore, while the nature of the offense, the conspiracy, or the fact that others have been detained may be considered by the judicial official in the instant case, the judicial official is commanded to make an individualized assessment for each pre-trial detainee. Stack v. Boyle, 342 U.S. 1 (1952) (holding that the Eighth Amendment requires that "the fixing of bail for any individual defendant must be based upon standards relevant to the purpose of assuring the presence of that defendant," although the 1984 BRA added "safety of the community" to the purposes of pre-trial detention.)

Because a detention hearing under the Bail Reform Act is not a trial on the merits, the Government cannot simply assert that the evidence of guilt is strong regarding conviction. To obtain detention, the Government must provide evidence (that meets or exceeds the two burdens) regarding danger and flight.[5] Indeed, the Ninth Circuit has held that the weight of the evidence is the least important factor in analyzing whether detention is appropriate. United States v. Hir, 517 F.3d 1081, 1090 (9th Cir. 2008).

EVIDENCE DEMANDS RELEASE

a. The Government's Evidence and Argument Fail

---

[5] See, e.g., United States v. Hunt, 240 F.Supp.3d 128, 134 (D. D.C. 2017); United States v. Stone, 608 F.3d 939, 948 (6th Cir. 2010).

The Government proffered evidence, largely in the form of recitations of the allegations contained the Superseding Indictment (DE# 119), and called the lead agent from the Naval Criminal Investigative Service (NCIS). In addition, the Government presented two videos, and a number of photographs or screenshots from electronic devices (generally, cell phones) seized during its investigation.

The Government's investigation began in the spring of 2020, and Joseph Maurino's identity became known to the Government in around July 2020 in connection with an alleged trip he made to Idaho. To conform to its theory that the five 20- to early 30-year-old defendants were conspiring to create civil disorder, the Government recast mundane, commonplace, or admittedly juvenile, tasteless or even troubling statements or videos (but protected First Amendment speech) to fit a single narrative of pernicious and criminal conduct.

For instance, defense testimony and evidence that then-17-year-old Joe Maurino entered the Army National Guard within weeks of graduating high school, had achieved good reviews or commendations, including for his tactical proficiency, and had been deployed to Qatar and to assist at a mass vaccination site in New Jersey upon return to the United States, was misdescribed in argument by the Government as part of an underhanded scheme to develop the skills to overthrow the United States Government.

The admission by the lead agent on cross-examination that the Government had no indication that Joe Maurino had taken any steps to advance any purported conspiracy after October 20, 2020 (the federal arrest of his co-defendants) or October 22, 2020 (the defendant's arrest on state charges in New Jersey), was portrayed by the Government as indication that Joe was biding his time to launch an attack.

The Government mischaracterized an idle reference to guns – quoting Biggie Smalls – to speculate that Joe has a secret cache of weaponry, even though the Government has been watching him at least since July 2020 and certainly since October 2020 without ever observing him hide or bury or secret weapons.

The Government mischaracterized an admittedly unkind statement Joe Maurino allegedly wrote about Jewish people as evidence of deep-seated anti-Semitism, even though Joe's mother Cynthia testified that one of the family's (and Joe's) closest connections is with a Jewish person who survived the Holocaust.

And the Government turned a purported reference to a "West Virginia" group into speculation of another group of supposed conspirators, even though the Government has no corroboration that any West Virginia group exists after a year of investigation and the cooperation of at least one co-conspirator in its investigation.

If believed, the Government's assertions indicate that Joe, at best, provided roughly $2,000 for purported firearms. No "ghost" gun has been located by the Government possibly because none ever has existed. The Government claims it recovered a rifle receiver from Joe's home, which itself is entirely legal under federal law. While the Government asserts that Joe was responsible for vetting individuals into the conspiracy, the Government's lead agent could only definitively point to three individuals it believed Joe had in fact vetted. And the Government's lead agent could point to no documents or messages establishing Joe's role as a purported vetter.

The Government has three problems with its evidence. First, where it has some evidence, it claims that evidence is proof positive of a criminal conspiracy, where a neutral observer might view the evidence as unremarkable, e.g., a list of common

7

foodstuffs and normal provisions most Americans were collecting in March 2020[6]; a boastful song lyric; a commendation for good performance in the military.

Second, where it has no evidence, it claims that the lack of evidence invites speculation about what Joe <u>might</u> do or is instead evidence of the Joe's commitment to "operational security."

Third, where it has evidence of hateful thoughts, speech, or even attendance at rallies, it enters a world where the Founders believed the Government ought not ordinarily tread: Protected First Amendment speech, association, and conduct.

b. <u>The Defense Evidence Requires Release</u>

The best evidence that Joe Maurino ought to be released pending resolution of this matter is the fact that during the period between October 20, 2020 and his arrest on the instant superseding indictment in late June 2020, Joe did not violate the terms of his state pre-trial release conditions, and according to the evidence presented at the detention hearing, did not engage in any illegal activity, did not obtain new firearms or either bury or dig up caches of weapons, did not fail to attend state court hearings as required, did not flee his childhood home, did not use his modest wealth in any way that signals an attempt to flee or advance a criminal conspiracy, did not attempt to contact co-defendants, did not post hateful or troubling messages or videos on the internet or social media, and did not go near Washington, DC when thousands of Americans trespassed on Congress on January 6, 2021.

---

[6] The Defense at a new hearing would offer testimony that the list of provisions presented by the Government as evidence of nefarious conduct was in fact a list of items to be purchased for the family in light of COVID.

Instead, after having been charged with the state gun charges in October 2020, Joe took the appropriate steps: he retained counsel, kept in touch with counsel,[7] continued his work with the Army National Guard[8] (including being assigned to assist at a mass vaccination center in New Jersey), and peacefully surrendered when approached by federal agents in late June at his home in Manalapan.[9]

Finally, Joe's characteristics indicate that he is someone who should be released. He is a high school graduate, has no other criminal convictions, no failures to attend court, is a veteran who served his country, has two parents of good character and no criminal history, a history of helping others[10], would return to his childhood home.

On its face, the Magistrate Judge's order (DE 146) failed to establish the appropriate standard of proof upon which his decision was made. It would further be argued – as more fully described above – that the evidence clear fell below the relevant standards, and that the Government's argument was largely speculative about Joe's future conduct based on the lack of bad conduct and the failure of the Government to locate evidence of dangerousness or flight.

WHEREFORE, the Defendant requests that he be released on appropriate conditions with his mother, Cynthia Maurino, as third-party custodian. In the alternative, the Defendant requests a hearing at which the arguments and evidence in favor of detention can be more thoroughly explored, including the tender of a second or

---

[7] The Defense offered a letter from Joe's state attorney, Mitch Ansell, confirming his good conduct while on pre-trial release.
[8] The evidence at the Detention Hearing indicated that Joe was separated from the ANG with "general under honorable conditions" because of the New Jersey state charges alone, not because of any other alleged conduct.
[9] The undersigned learned at the hearing about the existence of a possible video showing Joe Maurino peacefully surrendering in late June 2021, and would seek to present that video as further evidence of Joe's suitability for release.
[10] Jackson Bainbridge, Letter (Exhibit 2), referred to by counsel at the Detention Hearing, but not offered into evidence.

alternative third-party custodian, Guido Maurino, and potentially testimony by other people who know Joe Maurino in his community to assure the court of his good behavior and attendance at court hearings.[11]

This the 12th day of August 2021

                                                               THE CHETSON FIRM, PLLC

                                                               /s/ Damon Chetson
                                                               Damon Chetson
                                                               *Attorney for Defendant (Retained)*
                                                               N.C. State Bar #39575
                                                               19 W. Hargett St., Suite 508
                                                               Raleigh, NC 27601
                                                               Email: damon@chetson.com
                                                               Office: (919) 352-9411
                                                               Fax: (919) 887-7269

---

[11] In addition to testimony from Guido Maurino, the undersigned would potentially offer video of Joe Maurino's arrest and additional letters or testimony from individuals from Joe's community about their commitment to ensure good conduct on release. <u>The undersigned informs the Court that he is scheduled to begin a Capital Trial in Lee County on September 13, 2021, and therefore requests a hearing as soon as possible to avoid unnecessary delay.</u>

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served upon all parties to this action as identified in the Notice of Electronic Filing generated by this filing by electronically filing the foregoing with the Clerk of Court using the CM/ECF system.

Date: August 21, 2021

/s/ Damon Chetson
Damon J. Chetson